UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VHW, INC., and ROSE CLIFF, LLC.

                Plaintiffs,

                                           Case Number 06-12322-BC

v.                                      Honorable Thomas L. Ludington

GEOSTAR CORPORATION,

                Defendants.

_____ /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS,
DENYING DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER, GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND SCHEDULING
HEARING ON DAMAGES**

In May of 2006, the plaintiffs, VHW, Inc. ("VHW") and Rose Cliff, LLC ("Rose,") initiated

this action alleging that defendant Geostar Corporation ("Geostar") breached contracts with each

plaintiff for the installment purchase of certain common stock of Gastar Exploration, Ltd ("Gastar").

According to the complaint, VHW is a Utah corporation wholly owned by IDX, Inc., a Utah

corporation that is wholly owned by Von H. Whitby ("Whitby"), a resident of Utah.  Rose is a Utah

limited liability company. Whitby owns 100 percent of Rose Cliff's membership.

Several months later, in July of 2006, defendant Geostar, the purchaser of the Gastar stock,

answered the complaint.  In its answer, the defendant did not dispute the plaintiffs' allegations that

the contracts with the plaintiffs were signed by Whitby "on behalf of" the respective plaintiffs.

Compl.  at ¶ 13; Ans at ¶ 13.  Thereafter, on September 1, 2006 a scheduling conference was held.

A dispositive motion cutoff date of November 30, 2006 was established.  The parties later stipulated

to extend that deadline to December 15, 2006.

There are presently three motions before the Court.  On December 15, the plaintiffs filed a

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 contending that there is no issue of material fact that the defendant defaulted in payment of the installment purchase price for the Gastar stock and that they are entitled to damages equal to the amount of the unpaid purchase price.  The defendant does not dispute that it has defaulted in paying the purchase price for the Gastar stock; it simply contends that, appropriately read, the purchase agreements for the stock permit it to stop paying the installment payments and that the plaintiff stock sellers exclusive remedy is a return of the ratable portion of the stock that had not been paid for under the contract.  During oral argument, the parties acknowledged, not surprisingly, that the market price of the stock had declined.

On the same date the plaintiffs filed their motion for summary judgment, the defendant filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (c).  It asserts that the plaintiffs have no standing to enforce the purchase agreements executed by Whitby. The defendant, also not surprisingly,  filed a motion for leave to amend its answer in January of 2006 to "conform (its answer) to the plain language of the disputed contracts" in order to dispute that Whitby signed the agreements as representatives of the plaintiffs.  Finally, the defendant also seeks a determination that the express language of the agreements permits it to purchase the stock, so long as it wishes, and may, if it wishes, stop payment and "put" the balance of the stock to the seller.

The Court has considered the parties' submissions and heard oral argument on March 17, 2007.  The Court now concludes that based on the plaintiffs' complaint, supplemented by an uncontested affidavit from Whitby and attached to their summary judgment motion papers, the plaintiffs have standing to contest the contracts at issue, and the Court properly may exercise subject matter jurisdiction over the case. The Court also concludes that the defendant's motion to dismiss

lacks merit and that amendment of its answer to include an affirmative defense of lack of subject matter jurisdiction would be futile.  The Court additionally finds that the plaintiffs are entitled to damages in the amount of the purchase price for the stock and will grant the plaintiff's motion for summary judgment.

I.

According to the complaint, VHW invested $600,000 in a company affiliated with Geostar "to purchase certain oil and gas working interests in Powder River Basin 2002 Oil and Gas Working Interest Drilling Program (the "2002 Working Interests").  Compl. at 9.  VHW alleges that on January 1, 2004 it converted the 2002 Working Interests into 543,455 common shares of Gastar.  Compl. at 10.  Rose similarly invested $166,600 with an entity affiliated with Geostar "to purchase certain oil and gas working interests in the Powder River Basin 2003 Oil and Gas Working Interest ('the 2003 Working Interests')."  Compl. at 11.  Like VHW, Rose  similarly converted the 2003 Working Interest Interests in to 83,300 common shares of Gastar.  Compl. at 12.

VHW maintains that on October 15, 2004, Whitby "executed a certain Share Purchase Agreement, on behalf of VHW, which was signed and accepted by GeoStar on October 21, 2004, pursuant to which VHW agreed to sell 545,455 common shares of Gastar to Geostar ('the VHW Share Purchase Contract')."  Compl. at 13.  The share purchase agreement reads as follows:

**SHARE PURCHASE AGREEMENT**

This Share Purchase Agreement ("the Agreement") is made pursuant to an offer made to Geostar ("the Company") from Von H. Witby "the Shareholder") this 15 day [unintelligible], 2004, relative to the Shareholder's offer to sell a specified number of shares of Gastar Exploration, Ltd. common stock owned by the Shareholder under the terms and conditions set forth herein.

**NOTICE: BY EXECUTING AND DELIVERING THIS SHARE**

-3-

**PURCHASE AGREEMENT TO THE COMPANY, THE SHAREHOLDER HEREBY TENDERS AN UNSOLICITED OFFER TO SELL, ASSIGN, TRANSFER AND CONVEY THE GASTAR COMMON SHARES REFERENCED IN THIS AGREEMENT IN CONSIDERATION SET FORTH BELOW AND HEREIN.   THE SHAREHOLDER FURTHER UNCONDITIONALLY <u>RELEASES</u> THE COMPANY AND ITS SUBSIDIARIES, AFFILLIATES, REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS FROM ANY LIABILITY ARISING UNDER ANY APPLICABLE SECURITIES OR OTHER LAWS RELATING TO OR IN CONNECTION WITH THIS OFFER AND SALE OF GAS STAR COMMON STOCK.**

A.  Representations, Warranties and Covenants of the Shareholder:

The Shareholder represents, warrants, and covenants to the Company that:

1.  The Shareholder originally invested Six Hundred Thousand U.S. Dollars ($600,000) with an affilate of the Company to purchase oil and gas working interests . . . in the Powder River Basin . . . . . The Shareholder later converted the entire Working Interest . . . into (545,455) common shares of Gastar . . . common stock. The Share holder hereby offers and agrees to sell all of the Gastar Conversion Shares to the Company in consideration of the payment of . . . ($1,636,364.00) plus interest thereon at the rate of . . . (4%) per annum from November 1 2004 through the date of final payment.  Said total sum to be payable by the Company in twenty-four (24) equal monthly installments, with the first installment to be due an payable on November 1, 2004.  2
 . . .

B.  Miscellaneous

1. This Agreement, when executed by the Shareholder, shall constitute full and final conveyance of all of the Shareholder's right, title and interest in and to the specific Gastar Conversion Shares referenced in this Agreement.  All puts, calls and option owned by either party with regard to the Geostar Conversion Shares of the investment documents that yielded the Gastar Conversion Shares will be cancelled upon execution of this Agreement.
. . .
7. This Agreement shall be enforced, governed and construed in all respects in accordance with the laws of the State of Michigan, without regard to conflicts of laws principles.  Venue and jurisdiction shall lie exclusively within the State of Michigan for any and all claims or actions related to, arising from or in connection with this offer and Agreement.  Any legal proceedings shall be vested and brought

-4-

by solely by either Seller or Buyer, and not as part of, or in cooperation with any
other person not a party to this agreement, in any other proceeding.

Compl. Ex. 1, Share Purchase Agreement.

Thus, as VHW notes, the agreement provided for a full and final conveyance of all rights,
title and interest in and to the 545,455 common shares of Gastar in exchange for $1,636,364 in
twenty-four equal monthly installments at four percent interest annually. Compl. at 14 -15. Further,
VHW points out that attachment A to the agreement "provided for an additional payment of interest,
in the amount of $2,727.27 to VHW, for the period from October 15, 2004, until November 1,
2004." Compl. at 16. As reflected in the agreement, the installments of principal and interest were
due on the first day of each month beginning on November 1, 2004 through the date of final
payment. Compl. at 17.

VHW alleges that in the event Geostar "failed to make any payments, pursuant to the terms
of the VHW Share Purchase Contract, B(8) . . . Geostar would have [](60) days to cure the default
or delinquency." Compl. at 18. Geostar, it is conceded, "consistently and without objection made
full and timely payments to VHW" from November 1, 2004 through January 1, 2006. Compl. at 19.
However, "Geostar suddenly stopped making its mandatory monthly payments of principal and
interest on February 1, March 1, and May 1, 2006." Compl. at 20. In fact, VHW claims, as of May
23, 2006 when it filed its complaint, "Geostar has made no payments, whatsoever." Compl. at 21.
Further, the sixty day period for curing a default has since elapsed. Comp. at 22.

The same allegations are made with respect to Rose, save for the amount of shares involved
(83,300), the consideration for the purchase of the shares ($249,900), and the additional payment
of interest in attachment A ($416.50). *See* Compl. at 25-36.

The plaintiffs, in their six-count complaint, allege that Geostar breached the share purchase

agreements with VHW and Rose (unlabeled counts one and two); promissory estoppel with respect to both transactions (unlabeled counts three and four); and unjust enrichment as to both transactions (unlabeled counts five and six).

In their response brief, the plaintiffs assert that the defendant admitted in its answer that VHW and Rose were the appropriate plaintiffs in this action. The plaintiffs cite the following examples:

| ¶ | Sellers' Allegations in the Complaint | GeoStar's Corresponding Answers (Admissions) |
|---|---|---|
| 13 | "On October 15, 2004, Von H. Whitby executed a certain Share Purchase Agreement, on behalf of VHW, which was signed and accepted by GeoStar... VHW agreed to sell 545,455 common shares of Gastar to GeoStar (the 'VHW Share Purchase Contract')…" | **"Admitted"** |
| 19 | "GeoStar consistently and without objection made full and timely payments to VHW as required by the terms of the VHW Share Purchase Contract. | **"Admitted"** |
| 25 | "On October 15, 2004, Von H. Whitby executed a certain Share Purchase Agreement, on behalf of Rose Cliff, which was signed and accepted by GeoStar…, pursuant to which Rose Cliff agreed to sell 83,300 common shares of Gastar to GeoStar (the 'Rose Cliff Share Purchase Contract')…" | **"Admitted"** |
| 31 | "GeoStar consistently and without objection made full and timely payments to Rose Cliff as required by the terms of the Rose Cliff Share Purchase Contract." | **"Admitted"** |
| 39 | "VHW fully and timely performed all of its obligations under the VHW Share Purchase Contract." | **"Admitted"** |
| 42 | "Rose Cliff fully and timely performed all of its obligations under the Rose Cliff Share Purchase Contract." | **"Admitted"** |

| 51 | "GeoStar made an actual, clear and definite promise that it would purchase VHW's 545,455 shares of Gastar common stock…" | **"Admitted"** |
|---|---|---|
| **¶** | **Sellers' Allegations in the Complaint** | **GeoStar's Corresponding Answers (Admissions)** |
| 52 | "GeoStar reasonably expected to induce action of a definite and substantial character on the part of VHW…because GeoStar knew…that GeoStar's promise to pay an amount certain was the critical factor in VHW's decision to transfer all its right, title and interest in the 545,455 common shares of Gastar to GeoStar." | **"Admitted"** |
| 58 | "GeoStar made an actual, clear and definite promise that it would purchase Rose Cliff's 83,300 shares of Gastar common stock…" | **"Admitted"** |
| 59 | "GeoStar reasonably expected to induce action of a definite and substantial character on the part of Rose Cliff …because GeoStar knew… that GeoStar's promise to pay an amount certain was the critical factor in Rose Cliff's decision to transfer all of its right, title and interest in the 83,300 common shares of Gastar to GeoStar." | **"Admitted"** |
| 65 | "On or about October 15, 2004, VHW transferred all of its right, title and interest in the 545,455 common shares of Gastar to GeoStar." | **"Admitted"** |
| 71 | "On or about October 15, 2004, Rose Cliff transferred all of its right, title and interest in the 83,300 common shares of Gastar to GeoStar." | **"Admitted"** |

Pls' Resp. Br. at 4-5; Ans at ¶¶ 13, 19, 25, 31, 39, 45, 51, 52, 58, 59, 65, and 71. The plaintiffs also furnished Whitby's affidavit with their motion for summary judgment. Whitby's affidavit eliminates any ambiguity surrounding his mention in the share agreements. It reads, in relevant part:

> 3.      Plaintiff VHW, Inc. . . . is a Utah corporation, which is a wholly owned subsidiary of IDX, Inc, a Utah corporation, the issued and outstanding shares of which are owned by me.
>
> 4.      Plaintiff Rose Cliff, LLC . . . is a Utah limited liability company. I own 100

% percent of the membership interest in Rose Cliff.

Def.'s Mot. Summ. J. Ex. I, Whitby aff. at ¶¶ 3-4.

Further, the plaintiffs contend that the share agreements do not contain an exclusive remedy provision, and that Michigan law permits monetary damages for a breach of contract. The problem, the plaintiffs maintain, with the return of stock is that the value of the stock has gone down and that Geostar contracted for a fixed purchase price, accepting the risk that the purchase price would decline.

## II.

The defendant brings its motion under Federal Rules of Civil Procedure 12(b)(1) and 12(c). Under the former, the Sixth Circuit has explained, "[a] Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Mich.*, 474 F.3d 324, 328 (6th Cir. 2007).

With respect to the latter, a Rule 12(c) motion allows the defendant to test whether, as a matter of law, the opposing party is entitled to legal relief even if everything alleged in the complaint is true.". *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993); *Vickers v. Fairfield Medical Center*, 453 F.3d 757 (6th Cir. 2006) (noting that "[t]he manner of review under Rule 12(c) is the same as a review under Rule 12(b)(6)"); *Wausau Underwriters Ins. Co. v. Vulcan Development, Inc.*, 323 F.3d 396 (6th Cir. 2003). The Court's role is to "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly

-8-

can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). The reviewing court "may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Nonetheless, while relaxed, the standard of review under Rule 12(c) "does require more than the bare assertion of legal conclusions." *Ibid.* "In practice, 'a . . . [pleading] must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)).

## A.

The defendant maintains that the plaintiffs' lack standing to challenge the share purchase agreements at issue in this case. To be sure, the share purchase agreements attached to the complaint are signed by Whitby and not unequivocally the named plaintiffs.

It is well-established that federal courts are courts of limited jurisdiction and may adjudicate only "cases" and "controversies." U.S. Const. art. III, § 2. This limitation is commonly enforced through the doctrine of standing, which requires that plaintiffs have a "concrete private interest in the outcome of the suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). To possess standing, a plaintiff must show that (1) it has suffered an "injury-in-fact" that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the conduct of the defendant; and (3) the requested relief would likely redress the injury suffered. *Friends of the Earth, Inc. v. Laidlaw Env. Servs.*, 528 U.S. 167, 180-181 (2000); *National Rifle Assoc. of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).

-9-

Standing must exist at each stage of litigation, and the burden a plaintiff must satisfy depends on the posture of the case. At the initial pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561.

1.

A cursory review of the complaint in this case plainly establishes standing at the pleading stage of the litigation. Accepting the plaintiff's well-pled assertion as true, as the Court must on a Rule 12(b) challenge, two breaches of contracts have been established. Paragraph 13 of the complaint recites that Whitby "executed a certain Share Purchase Agreement, *on behalf of VHW*, which was signed and accepted by GeoStar on October 21, 2004 pursuant to which VHW agreed to sell 545,455 common shares of Gastar to GeoStar." (emphasis added). As consideration, Geostar promised to pay $1,636,364 in twenty-four equal monthly installments at four percent interest annually along with an additional payment of interest in the amount of $2,727. Compl. at ¶¶ 14-16. For the most part, Geostar complied with its obligations under the share purchase. However, the defendant "suddenly stopped making its mandatory monthly payments of principal and interest on February 1, March 1, and May 1, 2006." Compl. at ¶ 20. In fact, Geostar had made no further payment as of May 23, 2006 when the complaint was filed.

The events giving rise to Rose's cause of action are nearly identical. Paragraph 25 of the complaint states that "[o]n October 15, 2004 Von H. Whitby executed a certain Share Purchase Agreement, *on behalf of Rose Cliff*, which was signed and accepted by GeoStar . . ., pursuant to which Rose Cliff agreed to sell 83,300 common shares of Gastar to GeoStar." The consideration

-10-

involved was $249,000, the terms of the payment mirror those in the VHW contract as did the failure on the defendant's part fulfill its obligation.

Simply stated, then, based on a reading of the complaint, the plaintiffs by a representative, entered into binding agreements with the defendant; the defendant breached those agreements creating an injury in fact, namely an economic loss; the defendant's failure to fulfill its obligations under the agreements not only is fairly traceable to the economic loss, it appears to be the direct cause; and an award of monetary damages would make the plaintiffs whole under the law.

2.

The defendant's argument that no standing exists cannot be based on a facial examination of the complaint. It fact, the defendant itself in its answer admits the material averments the plaintiffs make in the complaint. For example, it admits that Whitby in a representative capacity for both VHW and Rose Cliff entered into enforceable agreements with it and it did not fully perform its obligations under those agreements by failing to make timely payments or invoke the cure provision of the agreements. The only substantive issue that the defendant raises is what remedy is available for its admitted breach.

Taken together, the pleadings establish as a matter of law, that a breach of contract occurred. Further, it is well settled that factual acknowledgments in an answers are binding. *Ahghazali v. Secretary of Health and Human Services*, 867 F.2d 921, 927 (6th Cir. 1989) (reasoning that "[s]tatements in pleadings that acknowledge the truth of some matter alleged by an opposing party are judicial admissions binding on the party making them").

Somewhat belatedly, however, it appears the defendant has identified a theory under which it can defend the action. It insists that the Court look beyond the complaint to the attached contract.

-11-

The contract, as noted, is executed by Whitby in an representative capacity and not expressly by the plaintiffs. Thus, in its view, only Whitby can sue for breach of contract, not the plaintiffs. To circumvent its factual admissions, the defendant's ask the Court to permit it to amend its complaint presumably to make appropriate denials and include a defense of lack of subject matter jurisdiction.

To be sure, when a plaintiff attaches contracts to its complaint, the contents of those documents become part of the pleadings for purposes of a motion to dismiss under Rule 12(b)(6) or judgment on the pleading under Rule 12(c). *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). If the plain language of the attached contracts unambiguously preclude the relief the plaintiff seeks in its complaint, then the Court may grant a Rule 12 motion. *Ibid.*

A fair reading of the agreements attached to the plaintiffs complaint bears out the defendant's theory to some extent. For example, the preamble to VHW share purchase agreement reads:

> This Share Purchase Agreement ("the Agreement") is made pursuant to an offer made to Geostar ("the Company") from Von H. Witby ("the Shareholder") this 15 day [unintelligible], 2004, relative to the Shareholder's offer to sell a specified number of shares of Gastar Exploration, Ltd. common stock owned by the Shareholder under the terms and conditions set forth herein.

Compl. Ex. 1, VHW Share Purchase Agreement. The same language is repeated in the Rose share purchase agreement. Thus, neither VHW nor Rose Cliff is explicitly mentioned by name in the agreements.

More supportive of the defendant's argument is its citation to section B, paragraph 7 of the agreements, which provides:

> This Agreement shall be enforced, governed and construed in all respects in accordance with the laws of the State of Michigan, without regard to conflicts of laws principles. Venue and jurisdiction shall lie exclusively within the State of Michigan for any and all claims or actions related to, arising from or in connection with this offer and Agreement. Any legal proceedings shall be vested and brought by solely by either Seller or Buyer, and not as part of, or in cooperation with any

-12-

other person not a party to this agreement, in any other proceeding.

In the Court's view, the defendant's reliance on the share purchase agreements as dispositive of subject matter jurisdiction is unavailing. Although only Whitby is identified by name in the contracts, they also identify Whitby as acting in a representative capacity. Simply put, they neither expressly *exclude* or *include* the possibility that the plaintiffs are the true parties in interest to the contract. Only the "Seller" or "Buyer" could bring action in a court of competent jurisdiction based on paragraph 7 of section B. However, nothing in the share purchase agreements precludes the "Seller" from acting through an authorized representative.

Federal Rule of Civil Procedure 8 requires pleadings to contain only "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded." Fed. R. Civ. P. 8. Thus, as in this case, so long as not precluded by the original contract, the third party may initiate an action by way of a "short and plain statement . . . showing that the pleader is entitled to relief." Here, the plaintiffs have shown entitlement to relief by explaining that Whitby was acting in a representative capacity. And a fair reading of the contract does not foreclose Whitby from acting in such a capacity.

The defendant relies in substantial part on *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir. 2002), for the proposition that the plaintiffs in this case lack standing, and the Court subject matter jurisdiction, to have their claims adjudicated in this forum. In that case, one of the defendants leased a warehouse and subleased a portion of that warehouse to another defendant. The second

-13-

defendant provided services relating to a third company's production of car seats.  A fire occurred in the warehouse and destroyed substantial property owned by the third company and a corporate entity affiliated with it.  The complaint alleged that the defendants were negligent and failed to exercise due care in maintaining the warehouse in a safe condition, and their failure to exercise reasonable care was the proximate cause of the third company's damages.  The third company and the entity affiliated with it were insured by American Guarantee, and thus that insurance company became their subrogee.  However, American Guarantee was not a named party plaintiff in the action despite its entitlement to sue.  Rather, the plaintiff brought the action as the third company's purported subrogee, "notwithstanding that Zurich Switzerland [the plaintiff] never issue an insurance policy nor paid out any money to Lear [the third party company]."  *Id.* at 530.

Apparently, the plaintiff did not dispute that it was not the proper plaintiff and responded with a motion to substitute plaintiffs under Federal Rule of Civil Procedure 17(a).  The defendants then moved to dismiss under Rule 12(b)(6).  The district court denied the motion to substitute because it could find no basis for the plaintiff's contention that failure to name the correct plaintiff was an understandable mistake.  Because the plaintiff was not a proper party, the district court dismissed the case.  Thereafter, the statute of limitations on American Guarantee's claims ran, and the plaintiff filed an emergency motion for reconsideration.  The trial court denied that motion, and the plaintiff appealed.

The court of appeals reasoned that the plaintiff had no standing in the first instance to raise any claims because it lacked standing and the district court's subject matter jurisdiction could not be expanded to hear a motion for substitution.  The court explained:

> The Federal Rules of Civil Procedure cannot expand the subject matter jurisdiction
> of federal courts beyond the limits of U.S. Constitution. 28 U.S.C. § 2072(b).

-14-

Appellants rely upon the provision of Rule 17(a) which states that:

No action shall be dismissed on the grounds that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a). However, this provision must be read with the limitation that a federal district court must, at a minimum arguably have subject matter jurisdiction over the original claims. Such an interpretation is supported by the advisory committee notes to Rule 17(a):

> The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc., is added simply in the interests of justice. In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against the a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as re judicata.
>
> This provision keeps pace with the law as it is actually developing. Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed-both in maritime and nonmaritime cases. *See Levinson v. Deupree*, 345 U.S. 648 (1953); *Link Aviation, Inc. v. Downs*, 325 F.2d 613 (D.C. Cir. 1963). This provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the fight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James

-15-

> Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitations period.

Fed. R. Civ. P. 17 advisory committee's notes.

> The facts of this case are analogous to the last example illustrated by the advisory committee. An attorney made a mistake and filed the action in the name of Zurich Switzerland, when Zurich Switzerland had no claims whatsoever against the defendants, and no Article III standing to sue. American Guarantee, a totally separate entity, which was not vigilant in protecting its claims, cannot now benefit from Zurich Switzerland's mistake so as to take advantage of the suspension of the limitations period.

*Id.* at 531-32.

The instant case is manifestly different from the factual circumstances in *Zurich*. Indeed, the complaint in this case spells out that Whitby acted in a representative capacity such that the plaintiffs were the true parties in interest. In *Zurich*, the actual subrogee of the claims was mistaken when it filed its complaint against the defendants. Because it had never been injured, even on a facial reading of the complaint, in light of its failure to dispute that it was not the correct plaintiff, there could be no plausible injury in fact. Here, as noted earlier, the complaint taken together with the admissions contained in the defendant's answer established a breach of contract as a matter of law. At that juncture, there could be no argument that the plaintiffs were not injured in fact.

In *Zurich*, no relationship between the actual subrogee and the plaintiff was apparent, and the court of appeals was unwilling to allow Rule 17 to create an exception to a constitutional standing requirement. Here, the relationship was explained in the complaint itself. The fact that the defendant belatedly discovered that the plaintiffs were not expressly mentioned in the share purchase agreements does not alter the result, even if they were permitted to raise the issue of subject matter jurisdiction and make appropriate denials in an amended answer. Those contracts did not expressly

-16-

foreclose Whitby's role as an authorized agent. Taken together with Whitby's affidavit, the Court is convinced that the complaint sets forth the requisite basis for Article III standing and *Zurich* has no application under the facts of the present case.

3.

The corollary to Rule 8 is the liberal amendment policies embodied in Federal Rule of Civil Procedure 15. Rule 15 provides, in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Although liberal, it is well established that justice does not require the Court to grant leave to amend a pleading if to do so would be futile. *See, e.g., In re Ford Motor Co. Securities Litigation, Class Action*, 381 F.3d 563, 574 (6th Cir. 2004).

In this case, allowing the defendant leave to amend its answer to make the appropriate denials and an affirmative defense would not alter the outcome of the suit as explained above. The contracts do not preclude Whitby's participation in the agreements on behalf of the plaintiffs and the complaint reasonably explains Whitby's role in those agreements and, it should be noted, clearly estops Whitby from later attempting to enforce the agreements in his own name. At best, then, there would be an issue of fact as to whether Whitby acted in an individual or representative capacity.

To that end, the plaintiffs have filed a motion for summary judgment. Their motion includes an affidavit from Whitby explaining that he acted in a representative capacity in concluding the share purchase agreements:

-17-

3.  Plaintiff VHW, Inc. . . . is a Utah corporation, which is a wholly owned subsidiary of IDX, Inc, a Utah corporation, the issued and outstanding shares of which are owned by me.

4.  Plaintiff Rose Cliff, LLC . . . is a Utah limited liability company.  I own 100 % percent of the membership interest in Rose Cliff.

5.  On October 21, 2004, VHW and the Defendant GeoStar Corporation . . . entered into a Share Purchase Agreement pursuant to which VHW agreed to sell 545,455 common shares of Gastar . . . to GeoStar, for $1,636,364, plus interest at a rate of 4% per annum through the date of final payment, payable in . . . 24 equal, monthly installments commencing on November 1, 2004. . . . The first monthly payment also included an additional payment of $2,727.27 for accrued interest from the date the VHW Share Purchase[] Agreement was signed until November 1, 2004.  GeoStar last made a monthly installment of principal and interest on or about January 1, 2006. The final monthly installment was due on November 1, 2006.

6.  Rose Cliff and GeoStar entered into a Share Purchase Agreement, on October 21, 2004, pursuant to which GeoStar agreed to purchase 83,300 Gastar Shares for $249,000, plus interest at the rate of 4% per annum through the final date of payment, payable in . . . 24 equal monthly installments commencing on November 1, 2004 . . . . The first monthly payment also include an additional payment of interest $416.5 for accrued interest from the date the Rose Cliff Share Purchase[] Agreement was signed until November 1, 2004.  Geostar last made a monthly payment of principal and interest on or about January 1, 2006.  The final monthly installment agreement was due and payable on November 1, 2006.

7.  Pursuant to the VHW Share Purchase Agreement, VHW was to be paid $1,636,364 and $71,778.63 in interest over the life if the contract if timely paid.

8.  To date, VHW has been paid $1,050,532.70 in principal and $54,680 in interest under the VHW Share Purchase Agreement.

9.  Pursuant to the Rose Cliff Share Agreement, Rose Cliff was to be paid $249,900 in principal and $ 10,961.69 in interest over the life of the contract if timely paid.

10.  To date, Rose Cliff has been paid $160,454.55 in principal and $8,350.05 in interest.

11.  Therefore, Plaintiffs' aggregate damages are $694,986.99, plus interest at a rate of 4% per-annum through the date of final payment and statutory pre-filing and post filing interest.

Def.'s Mot. Summ. J. Ex. 2, Whitby aff. at ¶¶ 3-4.  The defendant has offered nothing to rebut this affidavit, and permitting it leave to amend its answer would not alter this result.  Denying the defendant's motion to dismiss and motion to amend its answer and granting summary judgment on the plaintiffs' breach of contract claims therefore is appropriate. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (stating that the party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion);   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (reasoning that a party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for [it]").

## B.

One final issue remains.  That is, whether the unambiguous provisions of the contracts at issue contain a single remedy in event of breach, here the return of the shares to the seller that had not been paid for as opposed to a judgment for the unpaid purchase price.   An extensive development of the law is not necessary to resolve this issue.  First, the parties agree that an express, exclusive remedy provision is enforceable.  Second, Michigan law is well settled that parties may contract for such a remedy assuming of course the presence of mutual assent.  *See, e.g., Short v. Hollingsworth*, 291 Mich. App. 271, 273-74 (1939).  Third, the parties concede that the contracts are unambiguous, although they interpret the language differently.

The defendant relies on section B, paragraph 6 of the agreements, which provides for the defendant's remedies: "Company may delay, cancel or recover payment if all relevant share certificates are not timely delivered."  The defendant also points to section B, paragraph 5 of the agreements, which provides for the shareholder's remedies: "Shareholder will be entitled to delivery

-19-

of any Gastar Coversion Shares not fully paid." Since the agreements contain an integration clause, *see* Share Purchase Agreement at § B, ¶ 2 (stating this "agreement constitutes the entire agreement between the Shareholder and the Company regarding the offer and sale of the Gastar Conversion Shares, and may be amended only by a writing executed by all parties"), the defendant reasons, and the only remedy specifically provided for the shareholder is the return of any stock not paid for, then the plaintiffs are left with only that provision by which to seek relief.

The language of the provision at issue does not refer, in any way, to the plaintiffs' entitlement to "any Gastar Conversion Shares not fully paid" as the plaintiffs only remedy.  Indeed, the language is not, in any manner, inconsistent with the plaintiffs' maintenance of an action for damages equal to the difference between the market value of the shares "not fully paid" and the contract purchase price.  Moreover, the fact that paragraph 2 of section B employs the language "will" does not alter the analysis other than to require the defendant to deliver the shares in the event of its default.

### III.

The Court concludes that the defendant's motion to dismiss should be denied, amendment of its answer to reflect certain denials and an affirmative defense would be futile, and the plaintiffs' are entitled to judgment as a matter of law on their claims for breach of contract.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt # 15] and its motion for leave to amend its answer [dkt # 22] are **DENIED**.

It is further **ORDERED** that the plaintiffs' motion for summary judgment [dkt # 16] is **GRANTED**.

-20-

It is further **ORDERED** that the parties appear for a hearing on damages on **May 29, 2007**

**at 3:30 p.m.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 13, 2007.

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 13, 2007.

s/Carol J. Greyerbiehl
CAROL J. GREYERBIEHL